The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Theresa B. Stephenson. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; or rehear the parties or their representatives. The undersigned, with the exception of the amendment of the Opinion and Award to include Finding of Fact #10, and for the purpose of making minor technical modifications, reach the same findings and conclusions as reached by the Deputy Commissioner.
******************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to the provisions of the North Carolina Workers' Compensation Act.
2. At the time of the compensable injury, on or about 19 April 1994, an employment relationship existed between plaintiff-employee and defendant-employer.
3. The carrier on risk on 19 April 1994 was Liberty Mutual Insurance Company.
4. Plaintiff's average weekly wage was $190.75.
5. Plaintiff suffered a compensable injury to her right elbow on or about 19 April 1994. Plaintiff received temporary total disability benefits from 20 April 1994 through 20 November 1994.
6. Plaintiff's medical records are admitted into evidence as Stipulated Exhibit #1.
******************
RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. Gary Kuzma and Dr. Vincent E. Paul are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
******************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 40 year old female who was employed by the defendant-employer on 12 April 1994 as a loader. Her work schedule required her to work 11:00 p.m. to 4:00 a.m. five days a week.
2. On 19 April 1994 plaintiff sustained an injury by accident arising out of and in the course of her employment when she injured her right elbow by bumping it several times.
3. Plaintiff suffered from a medial epicondylitis as a result of her compensable injury to her right elbow. Defendants paid temporary total disability from 27 April 1994 through 20 November 1994. An Industrial Commission Form 21 was approved 27 May 1995.
4. Plaintiff received treatment from Dr. Thomas Presson, an orthopedic surgeon, for the medical epicondylitis to her right elbow.
5. Dr. Presson released the plaintiff to light duty 5 August 1994 with restrictions of no overhead lifting or lifting over 10 pounds.
6. Plaintiff again saw Dr. Presson on 31 October 1994 and complained of numbness and tingling in her fingers. Dr. Presson referred plaintiff for nerve conduction studies which showed evidence of a mild right carpal tunnel syndrome, unrelated to the compensable epicondylitis of the elbow. At that time the studies did not show any ulnar nerve compression.
7. Plaintiff suffered no permanent partial disability and returned to work for a different employer, First Data, on 21 November 1994, at the same or greater wages than earned on 19 April 1994. At First Data the plaintiff was employed as a telephone operator where she constantly used her fingers and arms all day.
8. Plaintiff again had nerve conduction studies on 20 November 1995, which showed some ulnar nerve entrapment. This occurred approximately one and one-half (1 1/2) years after plaintiff stopped working for defendants and approximately one year after a November, 1994 nerve conduction study showed no ulnar nerve problems.
9. Plaintiff also received treatment from Dr. Gary Kuzma and Dr. Vincent Paul concerning plaintiff's right carpal tunnel syndrome and right ulnar nerve entrapment.
10. Of all the medical experts who examined plaintiff, only Dr. Paul, despite a negative test result, asserted that plaintiff's right ulnar nerve entrapment was caused by her employment. Dr. Paul was uncertain as to whether plaintiff's work at defendant-employer's was a contributing factor to her carpal tunnel syndrome, noting:
 "But I don't believe . . . Just to add, I don't know that I am any more able to say it didn't come [carpal tunnel] from workers' comp [sic], like Dr. Kuzma did, than I am to say that it did at this point."
According to Dr. Presson, plaintiff's work did not cause her ulnar nerve problems in-part because they manifested themselves only after she stopped working at defendant-employer's. According to Dr. Kuzma, plaintiff's work at UPS did not cause her carpal tunnel syndrome. The undersigned, considering all of the competent, credible expert medical testimony of record, gives greater weight to the testimony of Dr. Kuzma and Dr. Presson than to that of Dr. Paul.
11. There is insufficient medical evidence of record, however to support a finding that plaintiff's compensable injury by accident on 19 April 1994 to her right elbow was a significant contributing factor to plaintiff's carpal tunnel syndrome and ulnar nerve entrapment.
12. In addition, there is insufficient medical evidence of record from which to determine by its greater weight that plaintiff's employment with defendant-employer placed plaintiff at an increased risk of developing carpal tunnel syndrome than members of the general public not so employed.
******************
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's complaints of carpal tunnel syndrome and ulnar nerve entrapment did not result from plaintiff's compensable injury by accident to her elbow on 19 April 1994 arising out of and in the course of plaintiff's employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff's conditions of carpal tunnel syndrome and ulnar nerve entrapment are not diseases or disabilities related to the causes and conditions which are characteristic of and peculiar to plaintiff's employment with defendant-employer. N.C. Gen. Stat. § 97-53 (13).
3. Plaintiff is entitled to have defendants provide medical treatment arising from her compensable epicondylitis to her right elbow to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
4. Plaintiff is not entitled to have defendants provide all medical treatment arising from the condition of carpal tunnel syndrome or ulnar nerve entrapment. N.C. Gen. Stat. § 97-2 (6); N.C. Gen. Stat. § 97-53 (13).
5. Plaintiff is, therefore, entitled to no compensation for her carpal tunnel syndrome or ulnar nerve entrapment under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2 (6); N.C. Gen. Stat. § 97-53 (13).
******************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiff's claim for further medical treatment and compensation for her carpal tunnel syndrome and ulnar nerve entrapment is and under the law must be DENIED.
2. Defendants shall pay any medical expenses outstanding incurred by plaintiff as a result of her compensable epicondylitis to her elbow, when bills for the same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure.
3. Each side shall bear its own costs.
 S/ ______________________ MARY MOORE HOAG DEPUTY COMMISSIONER
CONCURRING:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER
S/ ______________________ COY M. VANCE COMMISSIONER
MMH:db